**TRANSPORTATION CABINET,**
Commonwealth of Kentucky,
Appellant,

v.

Fred CASSITY d/b/a C & B
Trucking, Appellee.

No. 94–SC–894–DG.

Supreme Court of Kentucky.

Dec. 21, 1995.

Amended March 26, 1996.

William M. Sawyer, Transportation Cabinet, Clayton B. Patrick, Frankfort, for appellant.

Bernard Pafunda, Pikeville, Pamela Carroll Farmer, Frankfort, for appellee.

STEPHENS, Chief Justice.

This appeal was brought by the Transportation Cabinet after a determination by the Court of Appeals that the Cabinet's procedure for enforcing KRS 138.990 is unconstitutional. A Transportation Cabinet enforcement officer issued Cassity four citations for statutory violations and immediately thereafter impounded his tractor and trailer. Cassity filed an action pursuant to 42 U.S.C. § 1983 (hereinafter § 1983) to recover damages suffered as a result of the loss of his equipment.

The issue is whether the Transportation Department's procedure for enforcement of KRS 138.990 results in a deprivation of procedural due process and is therefore unconstitutional.

Cassity's truck was stopped by Officer Slone on April 8, 1988, for a routine random safety inspection. Ultimately, the driver was issued four citations which were unrelated to the safety inspection. The citations which resulted in impoundment of the truck were: 1) no Kentucky motor fuel user's license (hereinafter KYU), KRS 138.665; and, 2) an expired extended weight decal, KRS 189.222. Driving with no KYU subjects the vehicle to mandatory impoundment. While driving with an expired extended weight decal subjects the vehicle to possible impoundment, such is not mandatory. The impoundment was carried out pursuant to KRS 138.990(15). The citations informed Cassity that a hearing would be held on April 26, 1988, in Pike County District Court. Cassity appeared in Pike District Court and was informed by the trial judge that the court did not have jurisdiction to hear the matter. Further, the court referred Cassity to the Cabinet for a hearing.

Officer Slone, upon issuing the citations, gave the driver a handwritten list of items required for the release of the vehicle. Those items were: 1) a KYU, with interstate for hire authority listed on the license; 2) Kentucky base registration plate required for all Kentucky residents; and, 3) a new extended weight decal. Additionally, the list contained the telephone numbers of the agencies Cassity needed to contact. Cassity did not obtain any of these items.[1] There was no hearing held to adjudicate the criminal penalties attached to the citations. Subsequently, Cassity's tractor was repossessed by his creditors from the impoundment lot. Cassity then filed the § 1983 action alleging damages resulting from deprivation of his constitutionally protected right to procedural due process under the Fourteenth Amend-

---

1. There is an application for an extended weight decal in the record but there is no evidence the decal was actually received by Cassity.

ment of the United States Constitution and § 2 of the Kentucky Constitution.

■■■ Initially, it is important to understand the statutory provisions which govern the actions taken. The Transportation Cabinet serves as the enforcement agency for the Revenue Cabinet with regard to motor carriers that do not pay their usage tax. KRS 138.725. This tax is paid through the issuance of a KYU. KRS 138.665. It is unlawful to operate on Kentucky highways without this license. KRS 138.720.[2] If cited for operation without this license, impoundment by the Transportation Cabinet is mandatory. KRS 138.990(15).[3] Pursuant to Transportation Cabinet policy, the enforcement officer must receive authority from a superior officer before impounding a vehicle. The superior officer would contact the Division of Motor Carriers to ascertain the status of the vehicle in question. Once the violation has been confirmed, the authority to impound is passed to the enforcement officer in the field and the vehicle is impounded. There is no regulation or statute that provides for a hearing at any time during these events.

■■ The Transportation Cabinet asserts there is no due process violation because Cassity had an opportunity for a hearing concerning his KYU revocation.[4] KRS 138.675 provides an opportunity for a showing of reasonable cause for failure to pay motor carrier taxes before the license revocation becomes final. The Division of Motor Carriers has a standard procedure whereby an initial notice is sent to the license holder sixty days before cancellation. The notice informs the license holder of the deficiencies which allows an opportunity to challenge the cancellation action or to correct the deficiencies. Additionally, KRS 138.729 provides that "[a]ny final ruling of the department of vehicle regulation with regard to the admin-

istration of KRS 138.655 to 138.725 shall be appealed to the Kentucky board of tax appeals." We agree that these statutes provide a motor carrier with an opportunity for a hearing concerning the revocation of the license. Again, once the license is revoked the motor carrier is subject to mandatory impoundment when using roadways within the state.

■ This Court's decision in *Division of Driver Licensing v. Bergmann*, Ky., 740 S.W.2d 948 (1987), is dispositive on this issue. In *Bergmann*, the statutory scheme was similar to the statutes involved herein. *Bergmann* concerned the mandatory revocation of a driver's license once the individual was convicted of a second DUI offense. We found no due process violation there because Bergmann had been given an opportunity for a hearing "at each of his two DUI convictions." *Id.* at 951. In this instance, once the KYU has been revoked, impounding of a vehicle operating without that license is mandatory. "The legislature provided no appeal provisions from" an impoundment. *Id.* at 950. Further, Cassity had an opportunity for a hearing when his license was revoked. As noted in *Bergmann*, "[t]here is no additional right to dispute the automatic orders" when a previous opportunity to be heard was provided. *Id.*

■ Once the enforcement officer is notified that the vehicle has no KYU, "there is no question of fact to be resolved." *Id.* Cassity had the opportunity, after the impoundment, to correct any clerical errors, regarding the KYU or the extended weight decal, which may have existed within the Division of Motor Carriers. As we have held:

> Here due process was completely satisfied when [Cassity] was notified of the revocation because the only possible issue he could raise was that of clerical error.

2. KRS 138.720. Prohibited acts.—With respect to KRS 138.655 to 138.725, it is unlawful for any person to:

(1) Fail to pay the tax imposed;

. . . . .

(4) Conduct any activities requiring a license without such license or after such license has been surrendered, canceled or revoked; . . .

3. KRS 138.990(15)—In addition to the penalties provided in KRS 138.990(14), the motor vehicle or vehicles of any person violating any provision of KRS 138.720 shall be subject to seizure by any officer duly authorized to enforce the provisions of KRS 138.655 to KRS 138.725.

4. Records indicate that Cassity's KYU was revoked in 1978 for failure to maintain a fuel tax bond.

Where there is the possibility of clerical error, written objection will bring such a matter to the attention of the agency administering the revocation.

*Bergmann,* 740 S.W.2d at 951.

■ Furthermore, the three-prong analysis found in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to test due process concerns for those individuals whose protected interests are subject to state action is satisfied. The factors to be considered are: 1) the nature and weight of the private interest that will be affected by the action challenged; 2) the risk of erroneous deprivation of such interest; and, 3) the governmental function involved and state interest served by such procedures, as well as administrative and fiscal burdens that would result from additional or substituted procedures. This Court has employed this analysis in testing procedural due process challenges. *Commonwealth v. Raines,* Ky., 847 S.W.2d 724 (1993).

■ Although Cassity's interest in his vehicle is significant, it is counter balanced with the state's compelling interest in collecting tax revenues. The risk of erroneous deprivation is low considering the procedures the Transportation Cabinet follows before impounding the vehicle. The enforcement officer must call into a superior officer who then checks with the Division of Motor Carriers. The Division of Motor Carriers runs a record check to determine if the individual has a valid KYU and is thus not delinquent in his tax payments. Once the status of the license is confirmed, the superior officer then informs the enforcement officer to impound the vehicle. Thus, the risk of mistaken impoundment is low. Additionally, the Transportation Cabinet would incur enormous administrative and financial burdens if they were required to institute a post-seizure hearing process, given the large number of citations issued. Therefore, Cassity's federal and state due process protections have been satisfied.

■ The Transportation Cabinet raised the issue of sovereign immunity as a defense to the § 1983 action. The Transportation Cabinet waived this defense by not raising the issue below and we decline to discuss the merits.

The decision of the Court of Appeals is reversed with the case remanded to the circuit court for further proceedings in accordance with this opinion.

All concur.

JAMES LEVIN, Special Justice, sitting.